EUGENE MILTENBERGER *et al.*, Appellants, *v.* JOHN W. SPAULDING *et al.*, Respondents.

*Bills—Protest.*—Generally, demand of payment of a foreign bill of exchange must be made by a notary or some duly authorized officer, or the protest will be invalid ; but when authorized by usage, demand may be made in accordance with the custom or law of the place where the bill is payable, by a notary's clerk.

*Bills—Demand.*—Where the acceptors of a bill of exchange were partners, and had failed and closed their place of business, and had no other office or place of business, a demand at the dwelling-house of one of the acceptors will be sufficient.

*Appeal from St. Louis Circuit Court.*

*S. Voullaire,* for appellants.

To hold the drawer, demand must be made, or due diligence exercised to make a demand.    As to what is due diligence is a question of law ; but there is no universal rule. It depends altogether upon the circumstances of each case. (1 Par. Bills, 443 ; Plahto's Adm'r v. Patchin, 26 Mo. 389.) The presentment of this bill of exchange was sufficient.

The demand by the notary's clerk must be sufficient here if it was in accordance with the uniform usage there. (Cribbs v. Adams, 13 Gray, 597 ; Nelson v. Totteral, 7 Leigh. 179 ; Atwell v. Grant, 11 Md. 101 ; Chitty on Bills, 459 ; Pars. Notes & Bills, 641, note *a*.)

A demand upon one partner is sufficient.    (1 Pars. Notes, 362 ; Otsego Co. Bank v. Warren, 18 Barb. 290 ; Erwin v. Downs, 15 N. Y. 575 ; Brown v. Turner, 15 Ala. 832 ; Hunter v. Hempstead, 1 Mo. 67.)

A demand at the residence of the acceptor is sufficient even though he have a well known place of business. (1 Pars. Notes & Bills, 422; Stevens v. Prentiss, 3 B. Mon. 461, 463; Schamburgh v. Commaguire, 10 Mart. 18; DeGrand v. Banks, 16 La. 461; Sussex Bank v. Baldwin, 2 Harrison, 488; Wiscans v. Davis, 3 Harrison, 277; McGrude v. Bank Wash., 9 Wheat. 198; Oakley v. Beauvis, 11 La. 487; Chit. Bills, 365-6.)

The demand of the servant and in her presence was sufficient to indicate the nature of the notary business. It was not necessary to leave a message. (Bills v. Holmes, 11 Ired. 16; Dufour v. Morse, 9 La. 333; Bank v. Allin, 16 Maine, 41; Hawkins v. State, 7 Mo. 190; Fackler v. Chapman, 20 Mo. 249; Marr v. Hill, 10 Mo. 320; Wadlow v. Perryman, 27 Mo. 279.)

Under the common law, outlaws and villeins of the soil could be appointed agents. (Sto. Ag. 9; Com. Dig., Attor. C. 4.)

Under the civil law, a slave could be an agent. (Sto. Ag. 10.)

*H. N. Hart*, for respondents.

There is no rule of the law-merchant better settled than that the endorser of a bill of exchange is liable as guarantor, not by reason of any express obligation, but by obligation of law; and for his protection the law annexes to his liability as a condition, that all reasonable endeavors shall be made to procure payments from those who are liable before him, in order to fix his liability. (1 Pars. on Con. 223.)

But it is insisted that calling to make demand at the residence of one partner, especially in the manner in which it is proved to have been done in this instance, without application at the last place of business of the firm, and without application at the residence of either of the other partners, cannot be held to be a good and sufficient presentment and demand. Indeed, in no case can a demand, at the residence of one partner only, of a servant, (a negro servant,) without word,

be considered as filling that measure of diligence which the law requires.    (Edw. on Bills, 483; 3 Kent, 104; Ellis' Adm'r v. Commercial Bank of Natchez, 7 How., Miss., 294, 303; The Granite Bank v. Ayers, 16 Pick. 392; Porter v. Judson, 1 Gray, Mass., 175; Pierce v. Pendar, 5 Metc. 352; Phipps v. Chase, 6 *id.* 691; Rives v. Parmly, 18 Ala. 256, 262.)

BAY, Judge, delivered the opinion of the court.

This was a suit by the endorsees of a foreign bill of exchange against the endorsers.   The acceptors resided in the city of Baltimore, and the demand was made by the clerk of the notary public; and one of the questions presented by the record is, whether such a demand can be made by the clerk of a notary.   This bill was drawn in Missouri upon parties residing in Maryland, and is therefore placed upon the footing of a foreign bill, for in this respect the several States of the Union are considered as foreign to each other.   Gilmer, the notary public who protested the bill for nonpayment, states in his deposition that he did not present the bill for payment, but procured one of his clerks to make the demand; that it was customary in Baltimore for notaries to employ clerks, and the clerks so employed frequently made demands, though he knew of no statute in Maryland which authorized it.   The record also contains the deposition of the clerk, showing that the demand was made by him at the request of the notary.

The books furnish several cases in which the right of a clerk to make the demand is contended for.   In Nelson v. Fotterall, 7 Leigh, 176, the Court of Appeals of Virginia, after a laborious investigation of the subject, held that the presentment of a bill by the clerk of a notary was regular and legal, more particularly if sanctioned by local usage.   The same is implied in Poole v. Dicas, 1 Bing., N. C., 649.   In Sutton v. Gregory, Peake, Add. cases, 150, Lord Kenyon admitted evidence of an entry made by a clerk in a notary's book, to prove presentment of a bill of exchange, and there

are several reported cases in which plaintiffs recovered on the evidence of a demand by a clerk, but in none of them was the question directly raised. Notwithstanding these cases and probably others, which we may have overlooked, it is very clear that the weight of authority is largely against it.

In Loftly v. Mills (4 T. R. 170), demand was made by a clerk, and a doubt was expressed as to its propriety, notwithstanding it was an inland bill. J. Buller observed: "The demand of a foreign bill must be made by a notary public, to whom credit is given, because he is a public officer."

In Chitty on Bills it is said that the presentation must be made by the notary public himself, as an accredited public officer, and will not be good if presented by his clerk. The same doctrine is maintained in Sander v. Brown, 3 McLean, 481; Chenowith v. Chamberlin, 6 B. Mon. 60; Carter v. Union Bank, 7 Humph. 548; Carmichael v. The Bank of Pennsylvania, 4 How. (Miss.) 567; The Onondaga Bank v. Bates, 3 Hill, 53; Ellis v. Commercial Bank of Natchez, 7 How. (Miss.) 294, and many other cases unnecessary to cite. As proof of protest is necessary to recover in a foreign bill, it should appear that the demand was made by a duly authorized officer. A notary public is a commissioned and sworn officer, clothed with certain powers, and in many States required to give bond for the faithful discharge of his duties, and as he is supposed to be appointed with reference to his capacity and integrity, he is entitled to a certain degree of public confidence; but not so with his clerk, who is in no sense a public officer, and cannot be made amenable to the public for any unfaithful act. The law therefore will not concede to the notary the power to delegate his authority to an irresponsible agent.

In Louisiana, there is a special statute authorizing notaries to appoint deputies, much after the manner of the appointment of the deputies of a sheriff under our law, and the notary is specially empowered to make demands and presentments by and through his deputy, and his certificate of protest must state the fact that the demand was made by depu-

ty, and such certificate is made by law evidence of the facts therein stated. In the absence, however, of any statutory regulation, it must be held as a general rule, that the clerk of the notary cannot make the demand.

We are next to consider whether proof of a local usage to the contrary prevailing in Baltimore, defeats the application of this general rule to the case in bar. The record shows that at the time the presentment was made there were but four notaries in the city of Baltimore, a number wholly inadequate to discharge the business which, in so large a commercial metropolis, would necessarily devolve upon them, and that it was a uniform custom there to employ clerks to make demands and presentments.

It is well settled that contracts made in one place, to be executed in another, must be governed by the law of the place of performance. Some of the text writers say that the demand must be made according to the law of the place, others according to the law of usage. The usages of particular places and of different trades and kinds of business, when uniform, reasonable and just, and not contrary to general law, are legally presumed to enter into the agreement of parties, and to determine the effect to be given to those agreements. (Bateman on Commercial Law, 116.) One of the stipulations of the contract on the part of the defendants in this case is to pay if the acceptors refuse upon a legal and proper demand, and the mode of making the demand must be governed by the law, and, in the absence of any positive legislative enactment, by the uniform and well known usage of the place of presentment, and such law or usage enters into and becomes a part of the contract, whether known to the parties or not; hence it is that on a bill of exchange, on its face payable on a fixed day, three days of grace are allowed, it being an established custom among merchants, and therefore making a part of the contract.

But the judgment in this case must be reversed for error in holding that the notary did not use due diligence to obtain payment of the acceptors. The proof tends to show that the

acceptors were partners in business, but at the maturity of the bill had failed and closed their business house, and had no other office or place of business in the city. The clerk of the notary therefore called with the bill at the dwelling-house of Mr. Appold, one of the acceptors, and was informed by a colored servant who opened the door, that Mr. Appold had gone into the country. The clerk also states in his deposition that he thinks he inquired for the wife of Mr. Appold, but did not see her. The court below seemed to think this did not disclose due diligence; we think otherwise. It is true that some of the authorities go so far as to hold that in a case of this kind demand should have been made of the wife, but there is no satisfactory proof that Appold had a wife. The deputy thought he had a wife, but it was a mere impression, unsupported by any knowledge or information in his possession, and, acting upon such impression, he inquired for her, but did not see her.

In the case of Belmont Bank v. Patterson, (17 Ohio, 78,) the notary called at the hotel in Cincinnati where the acceptor was boarding and was informed that he had gone down the river to be absent some days; whereupon the notary returned to his office and protested the bill, and this was held by the Supreme Court of Ohio sufficient to fix the liability of the endorser.

Under all the circumstances of this case, we think the notary exercised all the diligence required by law.

The judgment will be reversed and the cause remanded for further trial; Judge Dryden concuring; Judge Bates absent.